In the

# United States Court of Appeals
## For the Seventh Circuit

No. 13-1306

IN RE: C.P. HALL COMPANY,

*Debtor*,

APPEAL OF: COLUMBIA CASUALTY COMPANY,

*Objector-Appellant*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 12 C 2978 — **John W. Darrah**, *Judge*.

ARGUED APRIL 3, 2014 — DECIDED APRIL 24, 2014

Before POSNER, FLAUM, and ROVNER, *Circuit Judges*.

POSNER, *Circuit Judge*. The question presented by this appeal is whether a nonparty to a bankruptcy proceeding should be entitled to intervene in the proceeding. Hall, the debtor in bankruptcy, is a former distributor of asbestos and asbestos products. It quit that imperiled business in the mid-1980s but continued in corporate existence as a litigation shell. Tens of thousands of separate asbestos claims were filed against it. It sought to shift as much of the cost as pos-

sible to its liability insurers; and not until 2011 was it forced to declare bankruptcy, initially under Chapter 11 but the bankruptcy proceeding was later converted to Chapter 7 and a trustee was appointed.

Hall had $10 million remaining in insurance coverage from one of its insurers, itself bankrupt, called Integrity. But there was a question whether Integrity's policy actually covered the loss for which Hall was seeking indemnity under the policy. The parties agreed to settle for $4.125 million, and the bankruptcy judge, whose approval was necessary for the settlement to be valid, approved it.

Enter Columbia Casualty Company, the appellant. Columbia is not a creditor of Hall, but rather an excess insurer of Hall's asbestos liabilities, with maximum coverage of $6 million. It worries that Hall, by virtue of having settled its insurance claim against Integrity rather than persisting in the litigation in the hope of obtaining indemnity of the full $10 million, has increased the likelihood of Columbia's having to honor its secondary-coverage obligation. It therefore filed an objection to the settlement. The bankruptcy judge refused to consider the objection, on the ground that Columbia had no right to object. Columbia appealed and the district judge affirmed, precipitating Columbia's further appeal to this court.

The parties call the issue presented by the appeal "bankruptcy standing." That is a misnomer. Article III of the federal Constitution has been interpreted to confine the right to sue in a federal court ("standing to sue") to a person or firm or other entity that has suffered some tangible loss for which, if the defendant's liability is established, the court could provide a remedy. See, e.g., *Lexmark Int'l, Inc. v. Static*

*Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014). The rule thus excludes suits concerning what John Stuart Mill in *On Liberty* (1859) called "self-regarding acts," to distinguish them from "other-regarding acts," that is, acts that harm other people. He gave as an illustration of a self-regarding act the practice of polygamy in Utah, thousands of miles from England and hence harmless to the English. The English were "others" to the polygamous activity in Utah despite the indignation that the English people felt toward that activity. Mill thought in other words that the English had no "standing" to object to distant polygamy, because it inflicted no tangible harm on them.

Columbia's objection to Hall's settlement with Integrity is not of that character. Columbia is complaining about an imminent threat to its financial assets, a threat that is traceable to the settlement and could have been eliminated by the bankruptcy court's enjoining the settlement. The loss it fears is only probabilistic. For there can be no certainty that it would benefit from rejection of the settlement. Had Hall litigated its claim against Integrity to final judgment, which might have been a consequence of Hall's demanding more than $4.125 million, it might well have ended up with nothing, since Integrity had a strong defense on the merits. But often a probabilistic harm suffices for Article III standing even when the probability that the harm will actually occur is small. See, e.g., *Massachusetts v. EPA*, 549 U.S. 497, 525–26 (2007); *Mountain States Legal Foundation v. Glickman*, 92 F.3d 1228, 1234–35 (D.C. Cir. 1996); *Village of Elk Grove Village v. Evans*, 997 F.2d 328, 329 (7th Cir. 1993). A 10 percent probability of obtaining $1,000 is $100; this is called an "expected value" and is real even though not certain.

But to become a party to the bankruptcy proceeding Columbia had to show not merely standing but that "a legislatively conferred cause of action encompasses" its claim. *Lexmark Int'l, Inc. v. Static Control Components, Inc., supra*, 134 S. Ct. at 1387. Specifically it had to show that the Bankruptcy Code conferred the right that it sought—the right to butt into a settlement negotiation between other parties. Its desire to butt in is understandable. Agreements settling lawsuits often have third-party effects. A company might pay so much in settlement of a suit that it could no longer afford to honor its contract to buy some input from a third party; the third party would be harmed. The logic of Columbia's claim to be entitled to object to Hall's settlement with Integrity is that Hall received so little in the settlement that it is bound to come after Columbia for the difference. The claim is weak. Columbia's lawyer would have to agree that by this logic an employee whom the lawyer's client had laid off because it foresaw having to make a big payout to Hall could challenge the settlement. That way madness lies—settlements made impossible by crowds of objectors.

The question we need to answer is whether the Bankruptcy Code, in providing that "a party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case [arising] under" the Code, 11 U.S.C. § 1109(b), confers a right to be heard on a debtor's insurer. The list of "parties in interest" is not exhaustive, but does suggest that such a party is someone who has a legally recognized interest in the debtor's assets, namely the debtor (or the trustee in bankruptcy, if as in this case there is a trustee) and the creditors. *In re James Wilson*

*Associates*, 965 F.2d 160, 169 (7th Cir. 1992), says that "everyone with a claim to the *res* [the debtor's assets] has a right to be heard before the *res* is disposed of since that disposition will extinguish all such claims." Later we said that the U.S. Trustee can be a "party in interest" too because of his watchdog role in bankruptcy cases. *In re South Beach Securities, Inc.*, 606 F.3d 366, 370–71 (7th Cir. 2010).

Even so enlarged, the list of persons having a right to appear and be heard in a bankruptcy case can't include Columbia. It is not a creditor of Hall's estate in bankruptcy, is not the debtor, and, unlike the U.S. Trustee, is not a guardian of conduct in bankruptcy proceedings. It is just a firm that may suffer collateral damage from a ruling in a bankruptcy proceeding, in this case the ruling approving the settlement between Hall and Integrity.

A number of decisions support our conclusion that the interest of an entity in Columbia's position is too remote to entitle the entity to intervene in a bankruptcy case. See *In re Teligent, Inc.*, 640 F.3d 53, 60–61 (2d Cir. 2011); *In re Refco Inc.*, 505 F.3d 109, 117–19 (2d Cir. 2007); *In re Alpex Computer Corp.*, 71 F.3d 353, 356–57 (10th Cir. 1995); *In re Kaiser Steel Corp.*, 998 F.2d 783, 788 (10th Cir. 1993); cf. *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1303 n. 11 (11th Cir. 2001). But Columbia asks us to reject all of them on the authority of two recent decisions by the Third and Ninth Circuits—*In re Global Industrial Technologies, Inc.*, 645 F.3d 201 (3d Cir. 2011) (en banc), and *In re Thorpe Insulation Co.*, 677 F.3d 869 (9th Cir. 2012).

*Global* adopted our construal of "party in interest" in the *James Wilson* case, 645 F.3d at 210–11, yet concluded that insurers of the debtor were entitled to object to a settlement. *Id.*

at 215. The debtor in *Global* had proposed a plan that would have channeled claims against it to a trust to which the debtor's liability insurance policies would be assigned. The insurers alleged that to obtain the claimants' approval of the plan the debtor had agreed to a large increase in the number of claims because the cost of the additional claims would be borne to a great extent by the insurers. 645 F.3d at 206, 214. The insurers were thus alleging that they were targets of a scheme between the debtor and its creditors, rather than accidental victims of a scheme directed against others. There is nothing like that in this case. Hall by settling was just trying to minimize the risk of coming up empty-handed in its suit against Integrity.

*Thorpe* was, like the present case, an asbestos case in which debtor and creditors had created a trust that would administer insurance claims; like *Global* it cites our opinion in *James Wilson* with approval. 677 F.3d at 884. The insurers' objection was not that the creation of the trust was a quid pro quo for increasing the number of claims against the debtor, as in *Global*, but rather that the plan that had created, defined, and empowered the trust had altered the terms of the contracts between the insurance companies and the debtor. See *id*. at 885–87. Of course taking away someone's contractual rights in a bankruptcy proceeding is an injury to which the victim should be allowed to object in the proceeding.

Our case doesn't involve a threat to Columbia's rights, though at oral argument there were some dark hints from Columbia's lawyer that there was hanky-panky involved in Hall's settlement with Integrity. The hints are absent from Columbia's briefs. All we learn there is that Columbia would

have liked an opportunity to prove that Hall should have been more aggressive in the settlement negotiations, because had it been it might have gotten a larger settlement and if so it would have a smaller potential claim against Columbia, its back-up insurer. That's just like our hypothetical case of the employee of Columbia who objects to the settlement on the ground that it may cost him his job by increasing his employer's potential liabilities.

It's not as if, unless Columbia can sue, no secondary insurer (whether an excess insurer, as in this case, or a reinsurer) can protect itself against its insureds' making settlements with their primary insurers that disadvantage the secondary insurer. An excess insurer can write a policy that does not require it to pay until the coverage limit of the primary policy, $10 million in this case, has been reached. Or the excess policy could provide that its coverage limit would drop down if the primary insurer proved to be insolvent, as Integrity proved to be. This would give the excess insurer a concrete stake in the bankruptcy, thus enabling it to file an objection to an attempt by the bankruptcy judge to disregard the provision in the excess policy in order to maximize the assets of the debtor available for distribution to the creditors.

It is better to leave matters to private contracting where that is feasible than to permit parties, especially sophisticated parties like Columbia, to ask a court to ride to its rescue from an oversight.

As an aside we note that if, contrary to what we've said, *Global* and *Thorpe* are inconsistent with *James Wilson* and the cases following *James Wilson*, it would not follow, as Columbia rather impertinently argues in its reply brief, that unless we overruled *James Wilson* the Seventh Circuit would be

"decid[ing] to split with its sister circuits on the proper rule for bankruptcy court standing." The implication is that if another court disagrees with one of our decisions, we shall be guilty of "splitting" if we fail to overrule our decision. If *Global* and *Thorpe* unconsciously (for remember that both purport to adopt our approach in *James Wilson*) rejected our decision, it would be the Third and Ninth Circuits that had "split" with us, not us with them.

Columbia further argues that *James Wilson* was overruled by a decision of ours, *In re Cult Awareness Network, Inc.*, 151 F.3d 605 (7th Cir. 1998). The court in that case did not say it was doing that (it did not even mention *James Wilson*); nor could it have overruled that decision without circulating its opinion in advance of issuance to the full court, 7th Cir. R. 40(e), which it did not do. Nor are the two decisions inconsistent. The debtor in the *Cult Awareness* case objected to the trustee's sale of its trade name, on the ground that the purchaser would use it to promote cults. The court noted that "occasionally a debtor might be able to satisfy all debts with the assets from the estate and be left with some amount remaining. If the debtor can show a reasonable possibility of a surplus after satisfying all debts, then the debtor has shown a pecuniary interest and has standing to object to a bankruptcy order." *Id*. at 608. Because Cult Awareness had not shown such an interest, it could not object to the sale of its trade name by the trustee. There is nothing in the opinion to suggest that non-debtor, non-creditor Columbia Casualty Company has the *kind* of pecuniary interest in the Hall bankruptcy that would entitle it to intervene in the

bankruptcy proceeding. Pecuniary interest is a necessary rather than a sufficient condition of such a right.

AFFIRMED.