**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 17a0560n.06

No. 16-2439

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| In re: AMY ROSENFELD, | ) | **FILED** |
| | ) | Oct 06, 2017 |
| Debtor. | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| _____ | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| JOEL ROSENFELD, | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| Appellant, | ) | |
| | ) | |
| v. | ) | OPINION |
| | ) | |
| AMY ROSENFELD, | ) | |
| | ) | |
| Appellee. | ) | |

Before: BOGGS, BATCHELDER, and BUSH, Circuit Judges.

**JOHN K. BUSH, Circuit Judge.** Joel Rosenfeld appeals the dismissal of an adversary proceeding that he brought in bankruptcy court against his ex-wife Amy Rosenfeld, a debtor in bankruptcy. The bankruptcy court dismissed Joel's adversary proceeding for lack of standing. The district court affirmed that dismissal. We now review the bankruptcy court de novo, and for the reasons that follow, we affirm.

**I**

In May 2013, after two years of contentious litigation that included eleven days of trial, the Oakland County Circuit Court granted a divorce to Amy and Joel Rosenfeld. Among other things, the court awarded Amy and Joel joint legal custody of their three minor children, granted Amy primary physical custody of the children, and awarded Amy the marital home. But in

January 2014, because of an allegedly severe mold contamination in the home, Joel sought and received an order preventing Amy from living in the marital home while she had physical custody of the children. In September 2014, Joel alleged that Amy had moved the children back into the marital home despite the continued presence of the mold, so Joel filed a motion to hold Amy in contempt. Joel also sought attorney's fees relating to the filing of that motion, and he sought exclusive physical custody of the children until the mold problem was remediated.

Eight days after Joel filed his motion for contempt, Amy filed for Chapter 7 bankruptcy relief in the bankruptcy court for the Eastern District of Michigan. The state court subsequently issued an order granting Joel's motion to hold Amy in contempt but postponing its decision on attorney's fees and other sanctions.

According to Joel, Amy "is using the bankruptcy process as a means to obtain a more favorable outcome on the issues of spousal and child support," and Amy is merely "portraying herself as 'bankrupt' . . . to gain hundreds of thousands of dollars in additional support payments." So, to stop Amy from receiving a discharge in bankruptcy, Joel filed an adversary proceeding against Amy in bankruptcy court, claiming that Amy should be denied a discharge under 11 U.S.C. § 727, a provision of the Bankruptcy Code that bars a court from granting a discharge to a debtor who has committed any of a number of wrongs, such as knowingly or fraudulently making a false oath or false claim in connection with the bankruptcy proceeding, or who has failed satisfactorily to explain "any loss of assets or deficiency of assets to meet the debtor's liabilities." Joel alleged that Amy made various misstatements in her bankruptcy filings and in her testimony during the bankruptcy proceedings, such as undervaluing her engagement ring, failing to explain the loss of her engagement ring, failing to disclose self-employment

income of approximately $1,000 per month, and failing to disclose her repayment of a loan that her father had made to her.

The bankruptcy court issued a show-cause order requiring Joel to show why that court should not dismiss his adversary proceeding for lack of subject-matter jurisdiction. As the bankruptcy court explained, Joel had not even alleged that he was one of Amy's creditors, let alone that he was a creditor as to any of Amy's debts that would be *dischargeable* in bankruptcy such that he would have an interest in forestalling a discharge. The court reasoned that Amy's debts to Joel, if any existed, would instead be non-dischargeable under either 11 U.S.C. § 523(a)(5) (debts "for a domestic support obligation") or § 523(a)(15) (debts "incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record"). "Thus, whether there is a debt or is not a debt, in either case," the court reasoned, "it appears that even if [Joel] were successful in this § 727(a) action, he would gain nothing for himself, beyond what he already has." In short, the bankruptcy court asserted that Joel lacked standing to bring an adversary proceeding in the bankruptcy court.

Joel promptly filed a "proof of claim" in the bankruptcy court asserting that he was indeed Amy's creditor as to three debts: (1) Amy's indemnification of Joel for claims related to the marital home; (2) Amy's obligation to give Joel his 50% share of certain marital property; and (3) Joel's claim for attorney's fees arising from the contempt proceeding against Amy. Joel conceded that the first two of these debts arose "under the [divorce] Judgment," but argued that the third debt arose not from the judgment of divorce *itself* but rather from Amy's violation of the divorce court's *subsequent* order requiring her not to live with the children in the marital home. Thus, Joel argued, he had standing to bring his adversary proceeding because at least

some "portion of [his] claim [was] in fact dischargeable." Alternatively, Joel argued that even if he was not Amy's creditor as to any of her dischargeable debts, he should still have standing to pursue his claim because "(1) the entire creditor body, (2) the federal judicial system, and (3) the people of the United States have a vested interest" in denying Amy a discharge under 11 U.S.C. § 727.

The bankruptcy court dismissed Joel's adversary proceeding for lack of standing for substantially the same reasons that it stated in its show-cause order. The court held that, even if Amy owed Joel a debt arising from her violation of the divorce court's post-judgment order, such a debt would still be non-dischargeable under 11 U.S.C. § 523(a)(15) because it was "incurred . . . in connection with" the divorce decree. And Joel could not show that a case or controversy existed because Amy's discharge in bankruptcy would not legally impair any of the alleged debts as to which Joel might have been Amy's creditor. Additionally, the court observed that basic principles of constitutional law prevented Joel from bringing his claim based only on alleged harms to other creditors, the federal judiciary, or the American people. *See Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("[W]hen the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction.").

Joel timely appealed, and the district court affirmed the bankruptcy court's dismissal of Joel's adversary proceeding. *Rosenfeld v. Rosenfeld (In re Rosenfeld)*, 558 B.R. 825, 831 (E.D. Mich. 2016) (affirming *In re Rosenfeld*, 535 B.R. 186 (Bankr. E.D. Mich. 2015)). Joel now seeks further review in our court. Joel has apparently declined to pursue his argument that Amy owes him a dischargeable debt, *see* Appellant's Br. 16–25, focusing instead on his second argument, which is that he has standing to bring an adversary proceeding against Amy even if all

4

the debts that she might owe him are non-dischargeable. Joel argues, as he argued below, that 11 U.S.C. § 727 "is punitive in nature and not merely remedial." Appellant's Br. 19. Joel argues that § 727's "primary purpose is to punish a debtor, even though its consequences may, in some cases, provide relief to a creditor." *Ibid.* Thus, any case-or-controversy requirement is satisfied, Joel argues, because Joel has alleged that Amy has made fraudulent statements in her bankruptcy proceeding for which she should be punished by denying her a discharge in bankruptcy. *Id.* at 21.

## II

"When reviewing an order of a bankruptcy court on appeal from a decision of a district court, we review the bankruptcy court's order directly and give no deference to the district court's decision." *Grant v. Granader (In re Granader)*, 657 F. App'x 554, 556 (6th Cir. 2016) (quoting *Chase Manhattan Mortg. Corp. v. Shapiro (In re Lee)*, 530 F.3d 458, 463 (6th Cir. 2008)). We review the bankruptcy court's conclusions of law de novo. *Parker v. Goodman (In re Parker)*, 499 F.3d 616, 620 (6th Cir. 2007).

Federal courts are courts of limited jurisdiction and may decide only "cases" and "controversies." U.S. Const. art. III § 2; *see Muskrat v. United States*, 219 U.S. 346, 356 (1911). The requirement that a plaintiff must have standing to bring an action in a federal court is "rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). At a minimum, to have standing, a plaintiff must allege an actual or imminent injury that is traceable to the defendant and likely to be redressable by the court. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). And the case-or-controversy requirements of Article III apply to adversary proceedings brought in bankruptcy courts, even

though bankruptcy courts are not Article III courts themselves. *See Stevenson v. J.C. Bradford & Co. (In re Cannon)*, 277 F.3d 838, 852–54 (6th Cir. 2002).

Here, the bankruptcy court was right to dismiss Joel's adversary proceeding for lack of standing. Even if Amy owed debts to Joel, if those debts were non-dischargeable (as the bankruptcy court held that they would be under 11 U.S.C. § 523, a conclusion that Joel does not now challenge), then Joel has no personal stake in whether Amy receives a discharge in bankruptcy. Contrary to Joel's arguments otherwise, federal courts—ours, the district court, and the bankruptcy court alike—lack constitutional authority to adjudicate a "generalized grievance." *Warth*, 422 U.S. at 499. And Joel's claim that creditors at large, the federal judiciary, or the American people have an interest in denying Amy a discharge is a hornbook example of a generalized grievance.

Joel's argument that he has standing because of the punitive purpose underlying 11 U.S.C. § 727 is also misplaced. Even when a federal statute allows a private individual to bring an action against a party for violating the statute—such as the Fair Credit Reporting Act, 15 U.S.C. § 1681, which imposes punitive damages for willful violations—the plaintiff must still have suffered a concrete and particularized injury in order to have standing to sue. *See Beaudry v. TeleCheck Servs., Inc.*, 579 F.3d 702, 705–08 (6th Cir. 2009). Thus, even if Amy is a debtor whose discharge is barred under 11 U.S.C. § 727, and even if the purpose of denying a discharge under § 727 is punitive,[1] Joel lacks standing to assert that statute against her.

## III

Accordingly, we **AFFIRM** the bankruptcy court's dismissal of Joel's § 727 adversary proceeding.

---

[1] We need not determine whether the primary purpose underlying 11 U.S.C. § 727 is punitive.