NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0364n.06

Case No. 21-1019

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Jul 26, 2021
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| LYN ALLEN and CINCINNATUS, LLC, | ) | |
| Plaintiffs-Appellants, | ) ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| GRETCHEN WHITMER, in her personal | ) | MICHIGAN |
| capacity, | ) | |
| Defendant-Appellee. | ) | |

BEFORE: BATCHELDER, WHITE, and DONALD; Circuit Judges.

**BERNICE BOUIE DONALD, Circuit Judge**. In April 2020, Michigan Governor Gretchen Whitmer ("Whitmer") implemented a temporary executive order that, among other things, restricted travel between residences within the State of Michigan. After Whitmer rescinded the order, Plaintiffs Lyn Allen and Cincinnatus, LLC (collectively, "Plaintiffs") sued Whitmer in her individual capacity, seeking nominal damages and declaratory relief based on their claims that the travel restriction violated their substantive due process and equal protection rights under both the United States Constitution and the Michigan Constitution. The district court dismissed Plaintiffs' claims on jurisdictional grounds. For the following reasons, we **AFFIRM** the district court.

I.

On March 10, 2020, Whitmer declared a State of Emergency under the Michigan Constitution in response to the COVID-19 outbreak in her state. On April 9, 2020, Whitmer issued Executive Order 2020-42 ("EO 2020-42"), which would become effective the following day and expire on April 30, 2020 at 11:59 p.m. Subject to several exceptions, EO 2020-42 imposed a series of restrictions on travel within the state, providing, in relevant part, that travel "[b]etween residences in this state [is permissible] through April 10, 2020. After that date, travel between two residences is not permitted." (R. 16-1 at PageID 274). EO 2020-42 stated that "a willful violation" of the restrictions imposed would result in a misdemeanor, consistent with MCL 10.33 and MCL 30.405(3). (*Id.* at PageID 279). Whitmer voluntarily rescinded the order on April 24, 2020, nearly a week before it was set to expire.

On April 25, 2020, Plaintiffs Lyn Allen ("Allen") and her limited liability company, Cincinnatus, LLC ("Cincinnatus"), sued Whitmer in her individual capacity, challenging the constitutionality of the travel restriction. Through Cincinnatus, Allen owns a fractional ownership share at a timeshare in Glen Arbor, Michigan. Allen was entitled to use the timeshare from April 17, 2020 to April 24, 2020 and claims that the travel restriction barred her from travelling to and enjoying the use of the property during that particular week. Plaintiffs also claim that the restriction did not prohibit the timeshare's co-owners, who are residents of Indiana, from traveling to the timeshare during the period in which the order was in effect.

Plaintiffs argue that the travel restriction was a violation of their right to travel and right to equal protection as recognized under both the Fourteenth Amendment of the United States Constitution and Article I of the Michigan Constitution. To that end, Plaintiffs sought nominal

damages under 42 U.S.C. § 1983 and declaratory relief under both 28 U.S.C. §§ 2201-02 and Michigan law.

After Whitmer moved to dismiss Plaintiffs' initial complaint, Plaintiffs filed an amended complaint. Whitmer again moved to dismiss, and the district court granted her motion and entered judgment in her favor. In ruling on the motion to dismiss, the district court held (1) that Plaintiffs lacked standing to seek nominal damages,[1] (2) that Plaintiffs' claims for declaratory relief were moot and barred by the Eleventh Amendment, and (3) that Cincinnatus lacked standing altogether.

This appeal then followed.

## II.

We review *de novo* a district court's legal conclusions on a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1). *Thomas v. City of Memphis*, 996 F.3d 318, 323 (6th Cir. 2021). "[T]he *plaintiff* has the burden of proving jurisdiction in order to survive the motion." *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986) (emphasis in original).

We also review *de novo* a district court's dismissal of a complaint for failure to state a claim pursuant to Rule 12(b)(6). *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008).

On review, we "consider the [Rule] 12(b)(1) motion first, since the Rule 12(b)(6) challenge becomes moot if this court lacks subject matter jurisdiction." *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). Moreover, we "may affirm the district court's dismissal of [a] [p]laintiff['s] claims on any grounds, including those not relied on by the district court." *Zaluski v. United Am. Healthcare Corp.*, 527 F.3d 564, 570 (6th Cir. 2008).

---

[1] In the heading of this portion of the opinion, the district court stated that Plaintiffs' claim for nominal damages was moot, but the actual analysis focused on whether Plaintiffs had standing.

III.

Article III of the Constitution limits our jurisdiction to resolving only "cases" or "controversies." U.S. CONST. art. III § 2. Standing is "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To demonstrate standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Libertarian Party of Ohio v. Wilhem*, 988 F.3d 274, 278 (6th Cir. 2021) (citing *Lujan*, 504 U.S. at 560).

Here, the district court considered only the third element, concluding that nominal damages would not redress Plaintiffs' alleged injuries. However, the district court issued its decision before the Supreme Court decided *Uzuegbunam v. Preczewski*, 141 S. Ct. 792 (2021). In *Uzuegbunam*, the Supreme Court held that "a request for nominal damages satisfies the redressability element of standing where a plaintiff's claim is based on a completed violation of a legal right." *Id.* at 802. That holding would appear to overrule the entirety of the district court's basis for concluding that Plaintiffs lacked standing.

Nevertheless, *Uzuegbunam* made clear that Plaintiffs do not automatically have standing to sue state officials merely because they request nominal damages. Indeed, the Supreme Court itself acknowledged the narrow import of its decision, explaining that it addressed "only redressability" and that "[i]t remains for the plaintiff to establish the other elements of standing (such as a particularized injury); plead a cognizable cause of action; and meet all other relevant requirements." *Id.* (internal citations omitted). Plaintiffs contend that their amended complaint satisfies these requirements, because they allege they "were injured (i.e.[,] barred from travelling)

in April 2020 [and] it was caused by Ms. Whitmer's discretionary actions[.]"  (Reply Br. at 5). We disagree.

To demonstrate injury-in-fact, a plaintiff must show that he or she "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (quoting *Lujan*, 504 U.S. at 560).  "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'"  *Id.*  (quoting *Lujan*, 504 U.S. at 560 n.1).  Although an injury need not be "tangible" to be concrete, the injury still "must actually exist."  *Id.* at 1548–49 (citation omitted).  "The existence of an abstract injury is insufficient for a plaintiff to carry his burden on this element."  *Lyshe v. Levy*, 854 F.3d 855, 857 (6th Cir. 2017).

Here, Plaintiffs challenge a law whose penalties were never enforced against them and was no longer in effect at the time they filed their lawsuit.  They do not allege (1) that they actually travelled and were penalized for doing so, (2) that they attempted to travel but were deterred by a real threat that the State would enforce the travel restriction, (3) that that they attempted to invoke one of the many exceptions to EO-2020-42 that might have permitted them to travel to the timeshare,[2] or (4) that they took any other action that might have demonstrated a sincere effort on their part to exercise the constitutional rights in question.  While none of these allegations alone would have necessarily sufficed to state an injury, the absence of *any* of them from Plaintiffs' amended complaint proves fatal to their argument that they suffered actual, measurable harm.

Plaintiffs' allegations are premised on their "speculative fear" that *if* Michigan *had* enforced the travel restriction against *them* in a particular manner, then such hypothetical

---

[2] Plaintiffs do make a categorical allegation in the amended complaint that "[n]one of the exceptions in EO 2020-42 applied to Plaintiff Allen's situation."  (R. 16 at PageID 257).  However, that allegation alone—without more—does not demonstrate that an exception indeed would not have applied.

enforcement *might* have resulted in penalties against Plaintiffs. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013). Essentially, Plaintiffs ask us to draw a conclusion that the travel restriction's mere existence created a cognizable injury to them, such that we must assess the law's constitutionality in the abstract. But an abstract judicial declaration that a law *was* unconstitutional, absent measurable harm against which to measure the law, would "create[] tension with Article III's prohibition against issuing advisory opinions." *Wheeler v. City of Lansing*, 660 F.3d 931, 940 (6th Cir. 2011). Simply put, Plaintiffs "may not assert merely the 'vindication of the rule of law' as [their] basis for harm without alleging an actual injury from the purported violation." *In re Cap. Contracting Co.*, 924 F.3d 890, 897 (6th Cir. 2019) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 106 (1998)).

Plaintiffs' claims are largely based on the notion that the State *could have* enforced the travel restriction against them had Plaintiffs chosen to travel to their timeshare. Plaintiffs' allegations reflect nothing more than the decision they made among their options by deciding not to travel. *See Clapper*, 568 U.S. at 416 (explaining that plaintiffs simply "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending"). To that end, Plaintiffs fail to demonstrate how the travel restriction uniquely affected them apart from all other residents who sought to travel within the state but refrained from doing so. *See Lujan*, 504 U.S. at 573–74 ("[A] plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy.").

Accordingly, we conclude that Plaintiffs have failed to demonstrate an injury-in-fact, and, therefore, lack standing as to all of their claims.[3]  Because Plaintiffs lack standing, we need not address the parties' other arguments as to whether the district court properly dismissed the amended complaint.

IV.

For the foregoing reasons, we **AFFIRM** the district court.

---

[3] We also note that Cincinnatus lacks standing because the amended complaint does not allege that the company suffered any harm separate from that of Allen.  *See Warth v. Seldin*, 422 U.S. 490, 515–16 (1975). Additionally, because our analysis rests on Plaintiffs' failure to meet the first element of the standing test, our holding is equally applicable to both Plaintiffs' claims for monetary relief *and* declaratory relief, even though the district court did not address Plaintiffs' standing as to the latter.

**HELENE N. WHITE, Circuit Judge,** concurring in the judgment.

I agree that the district court appropriately dismissed this case, but for different reasons than the majority. Allen alleges that she had the right to use her timeshare from April 17 to April 24, 2020, and intended to travel from Detroit to Northern Michigan to do so but chose not to because of the threat of fines or criminal penalties under EO 2020-42. Allen's loss of the use and enjoyment of the timeshare was a concrete and particularized injury directly attributable to EO 2020-42, which unambiguously prohibited Allen from traveling to her timeshare. Allen was not required to violate EO 2020-42 before she could challenge it. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128–29 (2007) ("[W]here threatened action by government is concerned, we do not require a plaintiff to expose h[er]self to liability before bringing suit to challenge the basis for the threat—for example, the constitutionality of a law threatened to be enforced.") (emphasis omitted). Where, as here, "[t]he plaintiff's own action (or inaction) in failing to violate the law eliminates the imminent threat of prosecution, [it] nonetheless does not eliminate Article III jurisdiction." *Id.* Accordingly, Allen has standing.

But standing is only the first hurdle. Because Allen alleges claims against Whitmer in her personal, rather than official, capacity, Whitmer may assert a qualified immunity defense against Allen's damages claim. In the mine-run of cases, qualified immunity requires a fact-intensive inquiry inappropriate for a district court to undertake at the 12(b)(6) stage. But this is not such a case. Where the "complaint establishes the defense," a complaint may be dismissed on qualified immunity grounds on a motion to dismiss. *Siefert v. Hamilton County*, 951 F.3d 753, 762 (6th Cir. 2020) (emphasis omitted). Here, assuming *arguendo* that the facts alleged in the Amended Complaint establish a violation of the Constitution, Allen's damages claim fails on the second prong of the qualified immunity analysis because no clearly established law would have put

Whitmer on notice that EO 2020-42 violated the Constitution. This court and many others have opined over the past year whether various governmental responses to the COVID-19 pandemic violated the Constitution, but none of those authorities existed when Whitmer issued EO 2020-42 on April 9, 2020. Allen may be correct that the general confines of equal protection and a right to intrastate travel were established in this circuit before April 2020, *see Johnson v. City of Cincinnati*, 310 F.3d 484, 497–98 (6th Cir. 2002), but she cites no case that would have established "beyond debate" that temporarily curtailing those rights in the context of the nascent, rapidly worsening COVID-19 pandemic violated the Constitution. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Therefore, qualified immunity bars Allen's damages claim.

This leaves the declaratory relief claims. Article III of the Constitution requires that there be a live case or controversy at the time we issue a decision. *Burke v. Barnes*, 479 U.S. 361, 363 (1987). And once a law is repealed or expires by its own terms, a desire for retrospective declaratory relief, standing alone, is not enough to keep the controversy live. *Id.* "We can neither declare unconstitutional nor enjoin the enforcement of a provision that is no longer in effect." *Brandywine, Inc. v. City of Richmond*, 359 F.3d 830, 836 (6th Cir. 2004). Allen does not argue that this case falls into one of the established exceptions to mootness, or that Michigan courts would treat the mootness question on the state declaratory relief claim any differently. We thus lack jurisdiction over Allen's now-moot declaratory relief claims. *See, e.g.*, *Pleasant View Baptist Church v. Beshear*, 838 F. App'x 936, 938 (6th Cir. 2020) ("Once a law is off the books and replaced with a 'new rule' that does not injure the plaintiff, a case becomes moot, leaving us with an absence of jurisdiction to adjudicate the case.").