**FILED**
U.S. Bankruptcy Appellate Panel
of the Tenth Circuit

**November 15, 2023**

**Anne M. Zoltani**
**Clerk**

PUBLISH

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE TENTH CIRCUIT

_____

| | |
|---|---|
| IN RE KENNETH ALLEN PETTINE, | BAP No. 23-013 |
| Debtor. | |
| _____ | |
| KENNETH ALLEN PETTINE, | Chapter 7 |
| Appellant, | |
| v. | |
| DIRECT BIOLOGICS, LLC, JEFFREY DONNER, and JOLI A. LOFSTEDT, Chapter 7 Trustee, | OPINION |
| Appellees. | |

_____

Appeal from the United States Bankruptcy Court
for the District of Colorado

_____

Submitted on the briefs.[1]

Nathaniel J. Thompson of Law Office of Nathaniel J. Thompson, LLC, Centennial, Colorado for Appellant Dr. Kenneth A. Pettine.

Andrew Nazar of Polsinelli PC, Kansas City, Missouri for Appellee Jeffrey Donner.

Joel Laufer of Robinson Waters & O'Dorisio, P.C., Denver, Colorado for Appellee Joli A. Lofstedt, Chapter 7 Trustee.

_____

[1] The parties did not request oral argument, and after examining the briefs and appellate record, the Court has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. Bankr. P. 8019(b). The case is therefore ordered submitted without oral argument.

_____

Before **SOMERS**, **JACOBVITZ**, and **LOYD**, Bankruptcy Judges.

_____

**JACOBVITZ**, Bankruptcy Judge.

_____

An expeditious, yet judicious, estate liquidation remains a central goal for the chapter 7 trustee in a bankruptcy case. To aid in this effort, the Bankruptcy Code has armed chapter 7 trustees with certain powers, subject to state law, to exercise the remedies available to a hypothetical judicial lien creditor to augment the bankruptcy estate. Here, a chapter 7 debtor challenges the trustee's motion for, and Bankruptcy Court's entry of, a charging order against a membership interest he held in a Wyoming limited liability company that is now property of the bankruptcy estate. The Bankruptcy Court concluded the debtor did not have standing to challenge the issuance of a charging order, but that even if he did have standing, the trustee was entitled to issuance of a charging order. Concluding the debtor had standing, we reverse the Bankruptcy Court's ruling that the debtor lacked standing. Finding no error on the merits, we affirm the Bankruptcy Court's issuance of the charging order.

## I.    Background

### A. The Bankruptcy

Appellant Dr. Kenneth Pettine ("Dr. Pettine" or the "Debtor") filed a chapter 7 petition for bankruptcy relief on April 23, 2019, in the United States Bankruptcy Court for the District of Colorado. The Bankruptcy Court appointed Joli A. Lofstedt as the chapter 7 trustee (the "Trustee"). On the petition date, Dr. Pettine held a 2.55754%

2

membership interest (the "Membership Interest") in Direct Biologics, LLC ("Direct Biologics" or the "LLC"). Accordingly, the Membership Interest became property of the bankruptcy estate.

Direct Biologics is a multi-member Wyoming limited liability company governed by Wyoming law. Direct Biologics's operating agreement (the "Operating Agreement") contains certain transfer restrictions, which limit the ability to transfer membership interests to unrelated non-member third parties.

On May 5, 2020, the Trustee filed a motion to sell the Membership Interest and other unrelated nonexempt assets to Dr. Pettine for $25,000. No party objected, but after the Trustee spoke with Appellee Jeffrey Donner,[2] a creditor,[3] the Trustee worked with Mr. Donner and filed a second motion to sell the Membership Interest free of the transfer restrictions in the Operating Agreement together with other assets as a package by auction to the highest bidder. Direct Biologics objected. After a hearing, the Bankruptcy Court entered an order denying the Trustee's second motion concluding the Trustee could not sell the Membership Interest without complying with the Operating Agreement's transfer restrictions.[4]

---

[2] Mr. Donner held 95% of the general unsecured claims filed against the bankruptcy estate. *See Schedule E/F* ¶ 4.3, *in* Appellant's App. at 32.

[3] *Decision Memorandum* at 1, *in* Appellant's App. at 47.

[4] *Order Denying Trustee's Motion to Approve Sale of Property of the Estate*, *in* Appellant's App. at 54.

On May 24, 2022, Dr. Pettine filed a *Motion to Abandon Interest in Direct Biologics LLC* (the "Motion to Compel Abandonment")[5] asking the Bankruptcy Court to compel the Trustee to abandon the Membership Interest under 11 U.S.C. § 554(b) and Federal Rule of Bankruptcy Procedure 6007(b). Dr. Pettine asserted the Membership Interest was of inconsequential value and benefit to the bankruptcy estate. The Trustee objected.

On October 6, 2022, the Trustee filed the *Trustee's Motion for Charging Order Against Direct Biologics, LLC, a Wyoming Limited Liability Company and Sale of Same to KPBKR, LLC Free An [sic] Clear of Liens, Claims and Interests* (the "Motion for Charging Order and to Approve Sale").[6] Attached to the Motion for Charging Order and to Approve Sale was a detailed proposed *Notice of Auction of Charging Order and Notice of Auction Procedures* and a bid form. By the Motion for Charging Order and to Approve Sale, the Trustee sought to exercise the rights and powers of a hypothetical judicial lien creditor under 11 U.S.C § 544(a)(1) to obtain a charging order under Wyoming law against the Membership Interest. The Trustee also asked for authority to sell the Trustee's interest in the charging order free and clear of liens. The Trustee's proposed charging order would direct all distributions made on account of the Membership Interest to be made to whomever held the charging order. Both Dr. Pettine and Direct Biologics filed detailed objections to the Motion for Charging Order and to Approve Sale.

---

[5] Bankr. Dkt. ECF No. 192.

[6] Motion for Charging Order and to Approve Sale, *in* Appellant's App. at 55–59.

On December 7, 2022, the Bankruptcy Court held a hearing on the Motion for Charging Order and to Approve Sale at which the Trustee and separate counsel for Dr. Pettine and Direct Biologics appeared. A forty-four-page transcript of the hearing is part of the record on appeal. At the hearing, the Trustee advised the Bankruptcy Court that KPBKR, LLC, an affiliate of a creditor of the Debtor, made an offer to buy the Trustee's interest in the charging order for $5,000 and that the Trustee thereafter received an overbid. The Trustee asked the Bankruptcy Court to approve an auction. The amount of the overbid is not part of the record on appeal. The Bankruptcy Court made no finding as to the value of the Membership Interest or of a charging order against the Membership Interest but acknowledged that the price for the interest in a charging order may be bid up at the auction. The Bankruptcy Court and the parties agreed to hold the Motion to Compel Abandonment in abeyance pending resolution of the Motion for Charging Order and to Approve Sale.[7] At the hearing, the Bankruptcy Court also found the administrative expenses in the case totaled $72,940, the unsecured claims exceeded $580,000, and there was no reasonable possibility of a surplus (solvent) bankruptcy estate.

On March 31, 2023, the Bankruptcy Court entered three orders, all resulting from the Motion for Charging Order and to Approve Sale: (i) an *Order Regarding Trustee's Motion for Charging Order and Sale* (the "Order Regarding Charging Order and Sale),[8]

---

[7] Bankr. Dkt. ECF No. 219.

[8] Order Regarding Charging Order and Sale, *in* Appellant's App. at 118 (containing findings and a detailed discussion of the Bankruptcy Court's authority to issue a charging order).

5

(ii) a *Charging Order* (the "Charging Order"),[9] and (iii) an *Order Authorizing Sale*[10] (collectively, the "Orders"). In the Order Regarding Charging Order and Sale, after noting that parties appearing before a bankruptcy court must have both Article III and prudential standing, the Bankruptcy Court determined that Dr. Pettine had no standing to challenge the issuance of the Charging Order. In the alternative, assuming standing, the Bankruptcy Court addressed the merits. The Bankruptcy Court determined that the Trustee had the right under 11 U.S.C. § 544(a)(1) to a charging order against the Membership Interest pursuant to Wyoming law and that the Charging Order would issue "in the amount of $681,907.18, less all sums collected by the Trustee."[11]

The Charging Order similarly states that it is "in the amount of $681,907.18, less all amounts collected by the Trustee, until satisfied in full."[12] The Bankruptcy Court made no finding regarding the amounts collected to date by the Trustee. The *Order Authorizing Sale* approved a sale of the Trustee's interest in the Charging Order free and clear of liens by public auction for $5,000 subject to overbid (apparently meaning that KPBKR, LLC's offer of $5,000 would be the opening bid at the auction).

### B.  The Appeal

On April 14, 2023, Dr. Pettine filed a single notice of appeal of the Orders (the "Notice of Appeal"). On April 17, 2023, the Tenth Circuit Bankruptcy Appellate Panel

---

[9]  Bankr. Dkt. ECF No. 233.

[10] *Order Authorizing Sale*, *in* Appellant's App. at 129.

[11] Order Regarding Charging Order and Sale at 11, *in* Appellant's App. at 128.

[12] Bankr. Dkt. ECF No. 233 at 2.

(the "BAP") entered an order construing the Notice of Appeal as two appeals and designating the appeal of the Charging Order and the Order Regarding Charging Order and Sale as BAP Appeal No. CO-23-13 and the appeal of the Order Authorizing Sale as BAP Appeal No. CO-23-14.[13] That same day, the BAP entered an *Order to Show Cause* as to why BAP Appeal No. CO-23-14 should not be dismissed as interlocutory. On May 4, 2023, the BAP entered an order dismissing BAP Appeal No. CO-23-14 for failure to prosecute.[14]

Accordingly, the appeal of the Charging Order and the Order Regarding Charging Order and Sale is now before this Court.

## II.     BAP Jurisdiction and Prudential Standing to Appeal

This Court has jurisdiction to hear timely-filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit, unless a party elects to have the district court hear the appeal.[15] Dr. Pettine timely filed an appeal of the

---

[13] The Charging Order and Order Regarding Charging Order and Sale concern whether a chapter 7 trustee may obtain a charging order under state and bankruptcy law. The Order Authorizing Sale concerns the sale of the Charging Order to another entity.

[14] BAP No. CO-23-14, ECF Dkt. No. 13.

[15] *See* 28 U.S.C. § 158(a)(1) and (b)(1), (b)(6)) and (c)(1); Fed. R. Bankr. P. 8003, 8005.

Charging Order and Order Regarding Charging Order and Sale.[16] No party has elected to have the district court hear the appeal.

Appellate review of a bankruptcy court order is further limited to "persons aggrieved" by the order or judgment on appeal.[17] "The 'person aggrieved' standing rule is a prudential limitation, not an Article III limitation."[18] To be a person aggrieved, a person's rights or interests must be directly and adversely affected pecuniarily by the order or judgment.[19] For the reasons set forth below in the discussion of Article III standing before the bankruptcy court, Dr. Pettine is a "person aggrieved" by the orders on appeal.

Accordingly, this Court has jurisdiction to hear this appeal, and the parties have standing before this Court.

## III. Issues on Appeal and Standard of Review

There are two issues on appeal. First, we must determine whether the Bankruptcy Court erred when it found Dr. Pettine lacked standing to object to the Motion for

---

[16] *See In re Durability, Inc.*, 893 F.2d 264, 266 (10th Cir. 1990) (noting "the appropriate 'judicial unit' for application of these finality requirements in bankruptcy is not the overall case, but rather the particular adversary proceeding, or discrete controversy pursued within the broader framework cast by the petition"). Here, the Charging Order disposed of the all the claims asserted in the Motion for Charging Order and to Approve Sale, accordingly it is a final order. *See Vance v. Spring Hill Signs, LLC*, No. 2013–CA–001264–MR, 2015 WL 1636832, at *3 (Ky. Ct. App. Apr. 10, 2015) (finding a charging order was a final order because it adjudicated all of the claims to post-judgment relief in terms of a charging order against the debtor's interest in the LLCs, as well as all rights to distributions in the LLCs).

[17] *In re C.W. Mining Co.*, 636 F.3d 1257, 1260 (10th Cir. 2011).

[18] *Id*. at 1261, n.5.

[19] *Id*. at 1260.

Charging Order and to Approve Sale. We review the Bankruptcy Court's fact findings

underlying its standing decision for clear error.[20] We review the Bankruptcy Court's

conclusion that Dr. Pettine had no standing de novo.[21]

Second, because we determine Dr. Pettine had standing before the Bankruptcy

Court, we must decide whether the Bankruptcy Court erred by holding that 11 U.S.C.

§ 544(a) permitted the Trustee to obtain a charging order against the Membership

Interest. We review this issue de novo.[22]

### IV. Analysis

#### A. Standing

We will address three issues in connection with the Bankruptcy Court's

conclusion that Dr. Pettine had no standing to object to the Motion for Charging Order

and to Approve Sale. First, we will address whether standing to have matters adjudicated

---

[20] *Fish v. Schwab*, 957 F.3d 1105, 1118 (10th Cir. 2020) ("[W]e review the factual findings underlying the district court's standing determination for clear error."); *Montoya v. Goldstein (In re Chuza Oil Co.)*, 639 B.R. 586, 592 (10th Cir. BAP 2022) (citing *Zubrod v. Kelsey (In re Kelsey)*, 270 B.R. 776, 779 (10th Cir. BAP 2001)). "A finding of fact is clearly erroneous if it is without factual support in the record or if, after reviewing all of the evidence, we are left with the definite and firm conviction that a mistake has been made." *In re Kelsey*, 270 B.R. at 779 (quoting *Homestead Golf Club, Inc. v. Pride Stables*, 224 F.3d 1195, 1199 (10th Cir. 2000)).

[21] *See Niemi v. Lassofer*, 770 F.3d 1331, 1334 (10th Cir. 2014) ("We . . . review the district court's rulings on standing de novo."); *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 219–20 (3d Cir. 2004) (dismissing certain parties to the appeal for lack of appellate standing). A court's conclusion whether a party has either Article III or prudential standing are questions of law, which we review de novo. *The Wilderness Soc'y v. Kane Cnty., Utah*, 632 F.3d 1162, 1168 (10th Cir. 2011) ("We review de novo the [trial] court's determinations regarding subject matter jurisdiction.").

[22] *See In re Taylor*, 899 F.3d 1126, 1129 (10th Cir. 2018) (reviewing a bankruptcy court's statutory interpretation de novo).

in bankruptcy court requires that a party satisfy the standing requirements imposed by Article III of the United States Constitution. Second, because we answer the first question in the affirmative, we will address whether Dr. Pettine had Article III standing to object to the Motion for Charging Order and to Approve Sale. Third, we will address prudential standing.

### 1. Does a party's standing to adjudicate matters in bankruptcy court require the party to satisfy Article III standing requirements?[23]

Prior to adjudicating any matter before it, it is fundamental that a federal court must have jurisdiction to resolve a dispute. Article III jurisdiction, if it is in genuine doubt, is a threshold question for Article III courts. Article III limits the jurisdiction of Article III courts to adjudication of cases and controversies.[24] This case-or-controversy requirement is the source of the requirements that for Article III courts to exercise jurisdiction to resolve a case, parties must have Article III standing and the case must not be constitutionally moot.[25]

The caselaw is unsettled regarding whether the Article III case-or-controversy requirement that imposes Article III jurisdictional constraints apply to non-Article III

---

[23] References to §§ 151 to 158 and to § 1334 refer to sections of Title 28. References to §§ 363, 554 and 1109 refer to Title 11, the United States Bankruptcy Code.

[24] *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58 (2014) stands for the proposition that Art. III, § 2 of the United States Constitution limits the jurisdiction of Article III courts to cases and controversies, which is the source of the Article III standing requirement.

[25] *Rio Grande Silvery Minnow v. Bureau of Reclamation,* 601 F.3d 1096, 1121 (10th Cir. 2010).

bankruptcy courts. Several circuits have concluded that Article III standing is required in proceedings before bankruptcy courts.[26] The Third, Seventh, and Eighth Circuits have reasoned that Article III standing requirements apply in proceedings before bankruptcy courts because Article III limitations apply to federal courts and bankruptcy courts are federal courts, without analyzing the issue further.[27] In contrast, the Fifth Circuit has

---

[26] *See In re Glob. Indus. Techs., Inc.*, 645 F.3d 201, 210 (3d Cir. 2011) ("To object to the confirmation of a reorganization plan in bankruptcy court, a party must, in the first instance, meet the requirements for standing that litigants in all federal cases face under Article III of the Constitution."); *In re Res. Tech. Corp.*, 624 F.3d 376, 382 (7th Cir. 2010) ("Article III's standing requirements apply to proceedings in bankruptcy courts just as they do to proceedings in district courts.") (citing *In re FedPak Sys., Inc.*, 80 F.3d 207, 213 (7th Cir. 1996)); *In re Farmland Indus., Inc.*, 639 F.3d 402, 405 (8th Cir. 2011) (Article III's standing requirements apply to proceedings in bankruptcy courts); *In re Thorpe Insulation Co.*, 677 F.3d 869, 884 (9th Cir. 2012) ("To have standing in bankruptcy court, Appellants must meet three requirements: (1) they must meet statutory 'party in interest' requirements under § 1109(b) of the bankruptcy code; (2) they must satisfy Article III constitutional requirements; and (3) they must meet federal court prudential standing requirements."). *See also In re Breland*, 989 F.3d 919, 920–21 (11th Cir. 2021) (overturning the bankruptcy and district courts' dismissals for lack of Article III standing and concluding the party met Article III threshold requirements); *In re Rosenfeld*, 698 F. App'x 300, 303 (6th Cir. 2017) (unpublished) ("And the case-or-controversy requirements of Article III apply to adversary proceedings brought in bankruptcy courts, even though bankruptcy courts are not Article III courts themselves.") (citing *Stevenson v. J.C. Bradford & Co. (In re Cannon)*, 277 F.3d 838, 852–54 (6th Cir. 2002), which holds that bankruptcy statutory standing is co-extensive with Article III standing).

[27] *See In re Glob. Indus. Techs., Inc.*, 645 F.3d at 210 ("To object to the confirmation of a reorganization plan in bankruptcy court, a party must, in the first instance, meet the requirements for standing that litigants in all federal cases face under Article III of the Constitution."); *In re Rosenfeld*, 698 F. App'x at 303 (applying the case or controversy requirement to adversary proceedings in bankruptcy courts and asserting federal courts "may decide only 'cases' and 'controversies.'"); *In re Farmland Indus., Inc.*, 639 F.3d at 405 (Article III standing before a bankruptcy court is required because "federal courts must ensure that Article III standing exists."). Several circuit courts, however, have recognized the derivative nature of bankruptcy court jurisdiction. *See infra* note 41.

concluded that Article III standing requirements do not apply to bankruptcy courts because bankruptcy courts are not authorized by Article III.[28]

The Fourth Circuit has conflicting decisions on whether Article III jurisdictional constraints apply to bankruptcy courts. In *Kaiser Gypsum*, the Fourth Circuit held that a party must have Article III standing before the bankruptcy court to object to confirmation of a chapter 11 plan because standing is an essential part of the Article III case-or-controversy requirement and is required in every case.[29] Subsequently, in *Kiviti*, the Fourth Circuit held that a bankruptcy court has jurisdiction to resolve a dispute in a proceeding that became constitutionally moot after referral of the proceeding to the bankruptcy court under § 157(a) because Article III constraints on jurisdiction do not apply to bankruptcy courts post-referral.[30]

---

[28] *In re Highland Cap. Mgmt., L.P*., 74 F.4th 361, 366–67 (5th Cir. 2023) ("Bankruptcy courts are not authorized by Article III of the Constitution, and as such are not presumptively bound by traditional rules of judicial standing."); *In re Technicool Sys., Inc.*, 896 F.3d 382, 385 (5th Cir. 2018) ("Bankruptcy courts are not Article III creatures bound by traditional standing requirements."). The Fifth Circuit's conclusions in *Highland Capital Management* and *Technicool* that bankruptcy courts are not subject to Article III jurisdictional constraints arguably is dicta because in both cases the court concluded that the "person aggrieved" test, which applies to standing before the bankruptcy court, is more stringent than the Article III standing requirement and the appellant in each case did not satisfy that requirement. 74 F.4th at 366–67, 896 F.2d at 385–86.

[29] *In re Kaiser Gypsum Co., Inc.*, 60 F.4th 73, 88, n.10 (4th Cir. 2023*), cert. granted sub nom. Truck Ins. Exch. v. Kaiser Gypsum Co.*, No. 22-1079, 2023 WL 6780372 (Oct. 13, 2023) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (a Supreme Court case that did not involve bankruptcy court jurisdiction)).

[30] *Kiviti v. Bhatt*, 80 F.4th 520, 532–33, 535 (4th Cir. 2023) (providing that neither the United States Constitution nor any statute requires that there be an Article III case or controversy for the bankruptcy court to act in a case or proceeding that a district court has referred to a bankruptcy court).

Neither the Tenth Circuit, nor this Court, has dispositively addressed this question, so we now examine the issue more closely. We agree with the conclusion of the courts holding that Article III standing limits the jurisdiction of bankruptcy courts. Our conclusion is based on the derivative nature of bankruptcy court jurisdiction.

### a. A Review of §§ 1334 and 157

We begin, as we should, with the text of the relevant statutory provisions. Section 1334(a) and (b) provides that "the district courts shall have original and exclusive jurisdiction of all cases under title 11" and "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."[31] Section 1334 grants jurisdiction over bankruptcy cases and proceedings to federal district courts; it does not grant any jurisdiction to bankruptcy courts.

Like § 1334, § 157 does not grant jurisdiction to bankruptcy courts.[32] In *Stern v. Marshall*, the U.S. Supreme Court explained: "Section 157 allocates the authority to enter final judgment between the bankruptcy court and the district court. That allocation does not implicate questions of subject matter jurisdiction."[33]

---

[31] 28 U.S.C. § 1334.

[32] 28 U.S.C. § 157.

[33] *Stern v. Marshall*, 564 U.S. 462, 480 (2011) (citation omitted). The Tenth Circuit, citing *Stern*, has also recognized that § 157, unlike § 1334, does not contain a jurisdictional grant. *In re Renewable Energy Dev. Corp.*, 792 F.3d 1274, 1283 (10th Cir 2015). *Accord In Re Point Ctr. Fin., Inc.*, 957 F.3d 990, 998 (9th Cir 2020); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 482–83 (4th Cir. 2015); *In re Fisher Island Invs., Inc.*, 778 F.3d 1172, 1190–91 (11th Cir 2015).

Section 157(a) gives a district court the discretion to refer to bankruptcy judges for the district any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11. Section 151 in turn provides that "bankruptcy judges in regular active service shall constitute a unit of the district court to be known as the bankruptcy court for that district."[34] Therefore, the referral of a case or proceeding to bankruptcy judges for the district equates to the referral of a case or proceeding to the bankruptcy court for the district.

Section 157 also provides:

- *Final orders and judgments in core proceedings*. In title 11 cases and in core proceedings that a district court refers to bankruptcy judges for the district, bankruptcy judges may hear and determine the referred cases and proceedings and enter final orders and judgments subject to the right of parties to appeal the decision to an Article III court.[35]

- *Proposed findings of fact and conclusions of law in noncore proceedings decided without consent.* In a noncore proceeding otherwise related to a title 11 case that a district court refers to the bankruptcy judges in the district, without the consent of the parties, bankruptcy judges may hear (but not determine) the proceeding and shall submit proposed findings of fact and conclusions of law to the district court for entry of any final orders or judgments by the district court.[36]

- *Final orders and judgments in noncore proceedings decided with consent.* With the consent of all parties to a referred noncore

---

[34] 28 U.S.C. § 151.

[35] 28 U.S.C. §§ 157(b)(1) and 158. "Core proceedings" are defined in 28 U.S.C. § 157(b)(2). However, with respect to core proceedings described in § 157(b)(2)(C), consent of all parties is required for the bankruptcy court to enter final orders and judgments. *See Stern v. Marshall*, 564 U.S. at 462. *See also Wellness Int'l Network, Ltd. v. Sharif,* 575 U.S. 665 (2015).

[36] 28 U.S.C. § 157(c). District courts may review the proposed finding of fact and conclusions of law de novo. *Wellness Int' Network, Ltd.*, 575 U.S. at 671.

proceeding that bankruptcy judges otherwise could hear but not determine, bankruptcy judges may hear and determine the proceeding and enter final judgments and orders subject to the right of parties to appeal the decision to an Article III court.[37]

- *Withdrawal of the reference.* Depending on the circumstances, the district court may or must withdraw a case or proceeding as set forth in § 157(d).

Every federal district court in the country has referred to the bankruptcy court in its district all cases and civil proceedings to the fullest extent permitted by 28 U.S.C. § 157.[38]

### b. Article III constraints on a district court's jurisdiction also constrain a bankruptcy court's jurisdiction.

A district court authorizes a bankruptcy court to hear, or to hear and determine, bankruptcy cases and proceedings by referring cases and proceedings to the bankruptcy court for the district under § 157(a).[39] A bankruptcy court's authority to hear, or to hear

---

[37] 28 U.S.C. §§ 157(c) and 158. Section 157(e) contains a further limitation on a bankruptcy court conducting a jury trial.

[38] 1 Norton Bankr. L. & Prac. 3d § 5:1 Background ("In practice, however, every district court has referred bankruptcy cases and proceedings to the bankruptcy court units of the districts."); *In re Maggard*, No. 02-84136-SSM, 2007 WL 3390009, at *2, n.3 (Bankr. E.D. Va. Nov. 9, 2007) ("[E]very district court in the country has, either by standing order or local rule, referred all bankruptcy cases and proceedings to the bankruptcy judges for the district"). *See also* General Procedure Order No. 1984–3, where the United States District Court for the District of Colorado has made the reference to the Bankruptcy Court for the District of Colorado of all cases under title 11 and any and all proceedings arising under title 11; D.C. Colo. L. Civ. R. 84.1(a) ("Automatic Referral. A case or proceeding brought under or related to Title 11 . . . shall be referred automatically to the bankruptcy judges of this district under 28 U.S.C. § 157.").

[39] *See Wellness Int'l Network, Ltd.*, 575 U.S. at 679 ("[B]ankruptcy courts hear matters solely on a district court's reference, § 157(a), which the district court may withdraw sua sponte or at the request of a party, § 157(d)."). In *Stern v. Marshall*, 564 U.S. at 480, the United Supreme Court stated that "[s]ection 157 allocates the authority to

15

and determine, cases and proceedings is dependent on such a referral, which constitutes the district court's grant of authority to the bankruptcy court to exercise the jurisdiction vested in the district court under § 1334, on the conditions and subject to the limitations set forth in § 157(b) to (e). That is the only source of a bankruptcy court's jurisdiction because § 157 does not itself grant any jurisdiction to bankruptcy courts,[40] nor does any other statute. Consequently, bankruptcy court jurisdiction is entirely derivative of district court jurisdiction[41] and cannot extend beyond the jurisdiction of the district court.[42]

Because Article III limits district court jurisdiction to adjudicating cases and controversies, and the derivative nature of bankruptcy court jurisdiction means that it

---

enter final judgment between the bankruptcy court and the district court."). Such allocation of authority to the bankruptcy court is effectuated by the district court referring cases and proceedings to the bankruptcy court under § 157(a).

[40] *See supra* note 33 and accompanying text.

[41] *See In re FedPak Sys., Inc.*, 80 F.3d 207, 213 (7th Cir. 1996) (construing 28 U.S.C. §§ 151, 157(a) and 1334(b), the Seventh Circuit concluded: "The jurisdiction of the bankruptcy courts is thus 'derivative' because it flows from the statutory grant of jurisdiction to the district courts."); *In re Barrett*, 964 F.2d 588, 591 (6th Cir. 1992) ("Bankruptcy Judges . . . have only derivative jurisdiction from the district courts.") (quotation and citation omitted); *In re Curtis*, 571 B.R. 441, 447 (9th Cir. BAP 2017) (A bankruptcy court's power to hear cases and proceedings is dependent on the referral by the district court and its jurisdiction is derivative of district court jurisdiction). *See also In re Thomas*, 765 F.2d 926, 929 (9th Cir. 1985) (recognizing the derivative nature of bankruptcy jurisdiction under an interim rule adopted after *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982)). *Cf. In re Renewable Energy Dev. Corp.*, 792 F.3d 1274, 1283 (10th Cir 2015) (if a district court does not have jurisdiction over a referred proceeding, the bankruptcy court could not hear the proceeding).

[42] *Cf. Spuhler v State Collection Serv., Inc.*, 983 F.3d 282, 284–85 (7th Cir. 2020) (Article III standing requirements apply to magistrate judges' exercise of jurisdiction over civil proceedings under 28 U.S.C. § 636(c) because district courts only have the power to refer civil proceedings over which they have jurisdiction to magistrate judges).

cannot extend beyond the jurisdiction of the district court, bankruptcy court jurisdiction is also so limited to adjudicating cases and controversies.[43] The Article III case-or-controversy limitation that constrains the jurisdiction of both district courts and bankruptcy courts limits the courts to adjudicating disputes between or among parties that have Article III standing.[44]

### c. A discussion of Fourth and Fifth Circuit Opinions addressing Article III jurisdictional constraints in bankruptcy cases.

We will now address the reasoning in the Fourth and Fifth Circuit opinions concluding that Article III jurisdictional constraints do not apply to bankruptcy courts.

The Fourth Circuit held in *Kiviti* that "[o]nce a case is validly referred to the bankruptcy court, the Constitution does not require it be an Article III case or controversy for the bankruptcy court to act."[45] Although *Kiviti* held that the Article III case-or-controversy requirement does not prevent a bankruptcy court from resolving constitutionally moot disputes in validly referred cases and controversies, the necessary implication of its holding is that there is no Article III standing requirement before a

---

[43] *In re Kilen*, 129 B.R. 538, 542 (Bankr. N.D. Ill. 1991).

[44] *Id.* ("In light of the derivative nature of the bankruptcy court's power, it is obvious that the constitutional standards of Article III which bind the district court also bind the bankruptcy court."). *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) for the proposition that Art. III, § 2 of the U.S. Constitution limits the jurisdiction of Article III courts to cases and controversies, which is the source of the Article III standing requirement.

[45] *Kiviti v. Bhatt,* 80 F.4th 520, 533 (4th Cir. 2023). *Kiviti* defines a validly referred case or controversy as one in which the district court had Article III jurisdiction at the time of referral. *Id*. at 532–33.

bankruptcy court in a validly referred case or controversy.[46] *Kiviti* reasons that Article III case-or-controversy constraints do not apply to bankruptcy courts as a matter of constitutional law because bankruptcy courts are not Article III courts; and Article III case-or-controversy constraints do not apply to bankruptcy courts by statute because no statute imposes Article III constraints on bankruptcy courts.[47] This is contrary to the Fourth Circuit's earlier opinion in *Kaiser Gypsum* that a party seeking to object to confirmation of a chapter 11 plan must have "Article III standing to press its objections" because "Article III standing is still required in every case."[48]

*Kiviti* recognizes that § 1334 grants jurisdiction over bankruptcy cases and proceedings to district courts, and that the authority of bankruptcy courts to hear cases and proceedings is dependent on a district court's referral of cases and proceedings to bankruptcy courts over which the district court had Article III jurisdiction at the time of referral.[49] But *Kiviti* goes on to say that once a case or proceeding is validly referred to a bankruptcy court under § 157, there is no Article III case-or-controversy requirement post-referral. *Kiviti* states:

---

[46] *See supra* note 30 and accompanying text.

[47] *Id.*

[48] *See In re Kaiser Gypsum Co., Inc.*, 60 F.4th 73, 88, n.10 (4th Cir. 2023*), cert. granted sub nom. Truck Ins. Exch. v. Kaiser Gypsum Co.*, No. 22-1079, 2023 WL 6780372 (Oct. 13, 2023). *Kiviti* cites *Kaise*r *Gypsum* only with respect to a district court's referral of noncore proceedings under § 157(c)(1) under which the bankruptcy court submits findings of fact and conclusions of law to the district court for entry of final orders or judgments by the district court and *Kaiser Gypsum*'s discussion of standing to appeal from a bankruptcy court decision. *Kiviti*, 80 F.4th at 533–34.

[49] *Kiviti*, 80 F.4th at 532–33.

> By § 157's text, a bankruptcy court's jurisdiction requires only that the case or core proceeding arise under Title 11 be referred to the bankruptcy court. Section 157 does not require every discrete dispute arising post-referral to satisfy Article III. Nor does any other provision. . . .
>
> . . . .
>
> . . . But bankruptcy courts are not "mere adjuncts" of district courts. *They exercise "broad powers" under their own statutory grant of jurisdiction* [apparently referring to § 157]. Congress did not impliedly limit that express grant through cryptic labelling in a separate provision.[50]

*Kiviti* concludes that Article III constraints imposed by statute would apply to bankruptcy court jurisdiction only if Congress so provided in a statute, but it has not, and therefore, there is no Article III constraint on a bankruptcy court's exercise of jurisdiction post-referral.[51]

This conclusion, which does not recognize the derivative nature of bankruptcy court jurisdiction, is predicated on the view that after a district court refers a case or proceeding to a bankruptcy court over which the district court had jurisdiction at the time of referral, § 157 is a separate grant of jurisdiction to the bankruptcy court over the referred case or proceeding not limited by Article III constraints. But as the Fourth Circuit itself recognized in *Houck*,[52] citing and quoting *Stern v. Marshall*,[53] § 157 does

---

[50] *Id*. at 533–35 (emphasis added; citations omitted).

[51] *Id*. at 535.

[52] *Houck v. Substitute Tr. Servs., Inc*., 791 F.3d 473, 482 (4th Cir. 2015) (quoting *Stern v. Marshall*, 564 U.S. 462 (2011) (emphasis added and citation omitted).

[53] *See Stern*, 564 U.S. at 462.

not grant any jurisdiction to bankruptcy courts.[54] Section 157 only authorizes a district court, by referring cases and proceedings to a bankruptcy court, to grant authority to the bankruptcy court to exercise the jurisdiction vested in the district court under § 1334, on the conditions and subject to the limitations set forth in § 157(b) to (e).

Similar to the Fourth Circuit's decision in *Kiviti*, the Fifth Circuit in *Highland Capital Management* concluded that Article III case-or-controversy constraints do not apply to bankruptcy courts because "[b]ankruptcy courts are not authorized by Article III of the Constitution."[55] The Fifth Circuit relies entirely on the fact that bankruptcy courts are not Article III courts to support its conclusion that Article III constraints on jurisdiction do not bind non-Article III bankruptcy courts. Like the Fourth Circuit, the Fifth Circuit does not recognize the derivative nature of bankruptcy court jurisdiction.

The constitutional issues implicated by the conclusion in *Kiviti* and *Highland Capital Management* that bankruptcy courts can adjudicate disputes beyond the jurisdiction of Article III courts further support our conclusion that Article III constrains bankruptcy court jurisdiction. It is a cardinal principle of statutory construction that

---

[54] *See supra* note 33 and accompanying text. Indeed, the referral structure under § 157 was a response to a predecessor statute that attempted to directly grant jurisdiction to bankruptcy courts over the same matters, which the U.S. Supreme Court struck down as unconstitutional. *See N. Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 87 (1982) (striking down 28 U.S.C. § 1471, which attempted to grant jurisdiction to bankruptcy courts over all civil proceedings arising under title 11 and arising in or related to cases under title 11).

[55] *In re Highland Cap. Mgmt., L.P.*, 74 F.4th 361, 366 (5th Cir. 2023).

courts should construe statutes to avoid serious constitutional problems unless such construction is plainly contrary to the intent of Congress.[56]

If *Kiviti* and *Highland Capital Management* were correct that Article III jurisdictional constraints do not limit bankruptcy court jurisdiction, then bankruptcy courts could resolve disputes where the parties lack Article III standing, the dispute is constitutionally moot, or both. Under this view, important components of § 157 would become unenforceable with respect to a bankruptcy court's adjudication of such disputes. Specifically, Article III courts could not review on appeal final orders and judgments of bankruptcy courts in core and noncore proceedings as required by §§ 157(b)(1), 157(c), and 158. District courts could not enter final orders or judgments in noncore proceedings in which bankruptcy courts submit proposed findings of fact and conclusions of law to the district court, contrary to the requirements of § 157(c). District courts also could not withdraw the reference of a proceeding under § 157(d) except for the purpose of dismissing the proceeding. These components of § 157 that would be unenforceable are essential to the statutory structure of § 157 that was designed to pass constitutional muster.[57]

---

[56] *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Const. Trades Council*, 485 U.S. 568, 575 (1988); *Hernandez-Carrera v. Carlson*, 547 F.3d 1237, 1249 (10th Cir. 2008).

[57] In *Marathon*, the United States Supreme Court held that the Congressional grant of jurisdiction to bankruptcy courts enacted as part of the Bankruptcy Reform Act of 1978 vested the judicial power of the United States in non-Article III bankruptcy courts in violation of Article III of the United States Constitution. Congress responded by enacting the Bankruptcy Amendments and Federal Judgeship Act of 1984. That Act included the adoption of 28 U.S.C. §§ 1334 and 151 to 158. The portions of § 157 that would be unenforceable if bankruptcy courts could adjudicate disputes that are

21

2.    **Did Dr. Pettine have standing to object to the Motion for Charging Order and to Approve Sale?**

The Bankruptcy Court observed that to have standing Dr. Pettine must have both Article III and prudential standing to object to the Motion for Charging Order and to Approve Sale.[58] The Bankruptcy Court did not expressly state whether it based its conclusion that Dr. Pettine lacked standing on Article III standing, prudential standing, or both. We will begin by examining whether Dr. Pettine had Article III standing.

### a. Did Dr. Pettine have Article III standing to object to the Motion for Charging Order and to Approve Sale?

Because we conclude that a party seeking relief before a bankruptcy court must have Article III standing, if Dr. Pettine did not have Article III standing, the Bankruptcy Court did not have jurisdiction to rule on the merits of Dr. Pettine's objection to the Motion for Charging Order and to Approve Sale. That makes Article III standing a threshold issue.

After pointing out that Dr. Pettine must have both Article III and prudential standing, the Bankruptcy Court concluded that Dr. Pettine did not have standing to object

---

constitutionally moot or devoid of Article III standing are essential components of the jurisdictional structure that the Supreme Court upheld as constitutional in, among other cases, *Stern v. Marshall*, 564 U.S. 462 (2011) and *Wellness Int'l Network, Ltd. v. Sharif,* 575 U.S. 665 (2015).

[58] The Bankruptcy Court did not address whether Dr. Pettine had statutory standing and the parties have not raised the issue on appeal. Statutory standing is not jurisdictional and may be waived. *In re Auld*, 689 F. App'x 623, 627 (10th Cir. 2017). *Accord Del Webb Cmtys., Inc. v. Carlson*, 817 F.3d 867, 872 (4th Cir. 2016); *Merrimon v. Unum Life Ins. Co. of Am.*, 758 F.3d 46, 53 n.3 (1st Cir. 2014). We express no opinion regarding statutory standing before the bankruptcy court in chapter 7 cases or any interplay between statutory and Article III standing.

to the Motion for Charging Order and to Approve Sale. The Bankruptcy Court reasoned that Dr. Pettine lacked standing because (i) Dr. Pettine did not claim an exemption in the Membership Interest, (ii) Dr. Pettine "does not have a pecuniary interest in the estate because there is no surplus the debtor may expect to receive from the Trustee's administration [of the estate]," and (iii) the Charging Order does not, as Dr. Pettine contends, effectively deny Dr. Pettine a discharge or impair his legal rights because the Trustee did not seek any relief that may make Dr. Pettine personally liable for any prepetition debt.[59]

Dr. Pettine contends that he had standing before the Bankruptcy Court because the Charging Order circumvented the effect of the chapter 7 discharge and stripped him of his fresh start. According to Dr. Pettine, the Trustee inevitably will abandon the Membership Interest to Dr. Pettine when the chapter 7 case is closed, and since a bankruptcy discharge voids any judgment obtained against the debtor, including a charging order, having to take the Membership Interest subject to the Charging Order when the case is closed effectively denies Dr. Pettine the benefit of his discharge. Dr. Pettine asserts this result shows that he has a pecuniary interest in the outcome of the Motion for Charging Order and to Approve Sale.

Appellees contend on appeal that because no possibility of a surplus after administration of the bankruptcy estate exists, Dr. Pettine does not satisfy the requirements for Article III standing.

---

[59] Order Regarding Charging Order and Sale at 5, *in* Appellant's App. at 122.

Article III standing requires that a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."[60] "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"[61] An injury is "particularized" if it affects the plaintiff in a personal and individual way.[62] An injury is "concrete" if it is real rather than abstract, although for the injury to be concrete it need not be tangible.[63]

We conclude that Dr. Pettine satisfied the requirements of Article III standing before the Bankruptcy Court. In assessing whether Dr. Pettine met the standing requirement, we must assume (without deciding) that the Trustee was not entitled to the Charging Order because entry of the Charging Order is the injury that Dr. Pettine challenges on appeal.

Dr. Pettine has satisfied the first requirement for Article III standing—injury in fact—for three reasons. First, if the Trustee was not entitled to obtain the Charging Order, the Membership Interest likely will be abandoned from the bankruptcy estate to Dr. Pettine unencumbered by a charging order. The Trustee has been unable to realize value

---

[60] *In re Peeples*, 880 F.3d 1207, 1212 (10th Cir. 2018) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016, revised May 24, 2016)).

[61] *Spokeo, Inc.*, 578 U.S. at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

[62] *Id.*

[63] *Id.* at 339–40.

from the Membership Interest by selling it in compliance with the transfer restrictions in the Operating Agreement. If the Trustee is unable to sell the Membership Interest or otherwise realize value from the Membership Interest by obtaining a charging order, the Membership Interest eventually will be abandoned from the estate unencumbered by a charging order.[64]

Second, if not encumbered by a charging order, it appears that the Membership Interest will have value to Dr. Pettine when it is abandoned from the bankruptcy estate. The Trustee received a $5,000 offer for her interest in the Charging Order as well as an overbid. At the Trustee's request, the Bankruptcy Court approved an auction of the Trustee's interest in the Charging Order and acknowledged that the sale price may be bid up at the auction. The parties have obviously spent considerably more than $5,000 litigating the Trustee's entitlement to obtain and sell her interest in the Charging Order, which suggests they think such interest has value. There is a reasonable prospect that the Membership Interest, if unencumbered by the Charging Order, has value to Dr. Pettine.

---

[64] Without a charging order, the Trustee could realize value from the Membership Interest only by receiving distributions, if any, made on account of the Membership Interest before it is abandoned from the estate. Direct Biologics is not obligated to make distributions to its members. There is no evidence in the record of any distributions made on account of the Membership Interest since the time the chapter 7 case was commenced on April 23, 2019. Although the Trustee could simply keep the bankruptcy case open indefinitely to receive potential distributions, as a practical matter, a chapter 7 trustee will not keep a bankruptcy estate open for years to receive potential future distributions when there is no evidence that substantial distributions will be made in the foreseeable future. The Membership Interest likely will be abandoned from the estate to Dr. Pettine when the bankruptcy case is closed if not abandoned sooner. *See* 11 U.S.C. § 554(c).

Finally, the Membership Interest will have less value to Dr. Pettine if it is abandoned from the estate encumbered by the Charging Order. If the Membership Interest is encumbered by the Charging Order when abandoned, Dr. Pettine would not receive distributions from the LLC until $681,907.18 is paid on account of the Charging Order, less all sums collected by the Trustee from other sources, unless Dr. Pettine acquires the rights under Charging Order. The Bankruptcy Court found that there is no reasonable possibility of a surplus estate, meaning that the Membership Interest encumbered by the Charging Order would have no value to Dr. Pettine. The Charging Order therefore diminishes the value of the Membership Interest to Dr. Pettine upon its abandonment from the estate. Consequently, if the Charging Order was improvidently entered, Dr. Pettine suffered an injury in fact. Dr. Pettine satisfies the first prong for Article III standing before the Bankruptcy Court.

Dr. Pettine also satisfies the other two requirements for Article III standing. The injury in fact is fairly traceable to the challenged conduct of the Trustee because it is caused by entry of the Charging Order challenged on appeal. Further, the injury in fact would be redressed by a favorable decision for Dr. Pettine on appeal. The Membership Interest would be abandoned to Dr. Pettine unencumbered by a charging order.

Ordinarily, a debtor will lack standing to challenge a chapter 7 trustee's administration of estate assets when there is no reasonable possibility of a surplus estate (i.e., when the estate is insolvent). Typically, if there is no surplus estate, no estate assets of consequential value will be returned to the debtor. The debtor's financial interests

26

therefore would be unaffected by the trustee's administration of the estate.[65] But that is not always true. Here, if Dr. Pettine prevails on appeal, the Membership Interest will have no or inconsequential value and benefit to the estate when abandoned from the estate to Dr. Pettine because of the transfer restrictions in the Operating Agreement, even though it appears that it will have consequential value to Dr. Pettine upon abandonment. On the other hand, if the Trustee prevails on appeal, the Membership Interest will have no value to Dr. Pettine when abandoned from the estate unless Dr. Pettine acquires the Trustee's interest in the Charging Order. Thus, Dr. Pettine's injury in fact caused by an improvidently issued Charging Order is not nullified because there is no reasonable possibility of a surplus estate.

### b. Did Dr. Pettine have prudential standing to object to the Motion for Charging Order and to Approve Sale?

In addition to Article III standing, standing before the bankruptcy court requires that a party has prudential standing.[66] Prudential standing consists of "a judicially-created set of principles that, like constitutional standing, places 'limits on the class of persons

---

[65] *E.g. In re Dinoto*, 576 B.R. 835, 838 (Bankr. E.D. Mich. 2017) (a debtor lacks standing to object to a claim if there is no reasonable possibility of a surplus estate); *In re Mohr*, 538 B.R. 882, 887 (Bankr. S.D. Ga. 2015) (same); *In re Ulz*, 401 B.R. 321, 328 (Bankr. N.D. Ill.), *aff'd sub nom. C&R Mortg. Corp. v. Ulz*, 419 B.R. 793 (N.D. Ill. 2009) (same).

[66] We have held that to have standing in bankruptcy court, a party must have Article III standing. In addition, a party must have prudential standing. *E.g. In re Veal*, 450 B.R. 897, 906 (9th Cir. BAP 2011); *In re Saratoga & N. Creek Ry., LLC*, 635 B.R. 581, 603 (Bankr. D. Colo. 2022); *In re Estrategias en Valores, S.A.*, 628 B.R. 722, 731 (Bankr. S.D. Fla. 2021).

who may invoke the courts' decisional and remedial powers.'"[67] Prudential standing

requires that a party asserts its own rights and interests and cannot rest its claim to relief

on the rights and interests of third parties.[68] This prudential standing requirement remains

---

[67] *Bd. of Cnty. Comm'rs v. Geringer*, 297 F.3d 1108, 1112 (10th Cir. 2002) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)).

[68] "Traditionally, the doctrine encompassed three broad principles: [1] the general prohibition on a litigant's raising another person's legal rights, [2] the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and [3] the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Hill v. Warsewa*, 947 F.3d 1305, 1309 (10th Cir. 2020) (quotation marks and citation omitted). But after the United States Supreme Court issued its decision in *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), prudential standing limitations no longer include the latter two requirements. *See Hill*, 947 F.3d at 1311 ("*Lexmark* made clear that the generalized grievance analysis is part of constitutional standing, not prudential standing.") and *In re Peeples*, 880 F.3d 1207, 1213 (10th Cir. 2018) (the zone-of-interests doctrine is not a matter of standing but instead addresses "whether a particular federal cause of action encompasses a particular plaintiff's claim") (quoting *Lexmark*). In *Lexmark*, the Supreme Court also noted: "This case does not present any issue of third-party standing, and consideration of that doctrine's proper place in the standing firmament can await another day." 572 U.S. at 127, n.3.

Although not all courts agree, the "person aggrieved" prudential standing requirement applies to appeals from bankruptcy proceedings, not to standing before the bankruptcy court. The "person aggrieved" standard is derived from "the former rule of appellate standing embodied in § 39(c) of the Bankruptcy Act of 1898, 11 U.S.C. § 67(c) (repealed 1978) . . . [and] is still applicable to all appeals from proceedings in the bankruptcy courts." *Holmes v. Silver Wings Aviation, Inc.*, 881 F.2d 939, 940 (10th Cir. 1989). The decision to continue to apply the "person aggrieved" standard to appeals from bankruptcy proceedings after enactment of the Bankruptcy Code "reflect[s] the understandable concern that if appellate jurisdiction is not limited, bankruptcy litigation will become mired in endless appeals brought by a myriad of parties who are indirectly affected by every bankruptcy court order." *Id*. (quotation marks and citation omitted).

28

"especially important in bankruptcy proceedings which often involve numerous parties who may seek to assert the rights of third parties for their own benefit."[69]

Dr. Pettine is asserting his own legal rights and not those of a third party. He owned the Membership Interest that became property of the estate, and he asserts a right to the return of the Membership Interest to him free of a charging order. Thus, we conclude Dr. Pettine had prudential standing to object to the Motion for Charging Order and to Approve Sale, and together with the Court's conclusion that Dr. Pettine had Article III standing, we determine Dr. Pettine had standing before the Bankruptcy Court.

### B.  Did the Bankruptcy Court Err by Issuing the Charging Order?

Having determined that Dr. Pettine had standing, the Court turns to the merits. The Bankruptcy Court granted the Motion for Charging Order and to Approve Sale and issued the Charging Order against the Membership Interest, which is property of the bankruptcy estate. The Bankruptcy Court concluded that 11 U.S.C. § 544(a)(1) permits the Trustee to assert the rights and powers of a judicial lien creditor of Dr. Pettine as of the petition date under the governing state law. Thus, in that capacity, the Trustee may invoke whatever remedies Wyoming law provides to judicial lien creditors, including the right to a charging order. We agree.

The Charging Order requires the LLC to make any and all distributions on account of the Membership Interest to the holder of the right to enforce the Charging Order until

---

[69] *In re Smith*, 620 F. Supp. 3d 551, 556 (W.D. Tex. 2022) (quoting *Marble v Sam Pack's for Cnty. Of Lewisville, Ltd.* (*In re Emergency Room Mobile Servs., LLC*), 529 B.R. 679, 685 (N.D. Tex. 2015).

the distributions equal $681,907.18 less all sums collected by the Trustee. That amount is the amount necessary to pay all claims against the estate in full.

Dr. Pettine argues that under § 544(a) a trustee stands in the shoes of a hypothetical creditor of the debtor that already had a judicial lien on the petition date and does not empower a trustee to obtain a new lien postpetition against property of the estate. Dr. Pettine contends that the Charging Order is such a new lien against property of the estate—the Membership Interest—created postpetition. According to Dr. Pettine, if a chapter 7 trustee could "create a new real lien against property of the estate to survive the bankruptcy,"[70] it would circumvent the effect of the chapter 7 discharge and improperly strip the debtor of a fresh start. Dr. Pettine argues further that § 544(a)(1) only permits a trustee to recover from third parties but does not permit a trustee to obtain a lien against property of the estate.

Dr. Pettine does not challenge on appeal the amount of the Charging Order or the Bankruptcy Court's application of Wyoming law. Nor does Dr. Pettine challenge whether the Trustee would have the right to sell her rights under the Charging Order assuming the Trustee is entitled to the Charging Order. Accordingly, those issues are not before us.

Appellees counter that Dr. Pettine incorrectly equates a charging order with a judicial lien and argue that under Wyoming law a charging order does not constitute a judicial lien against an interest in a limited liability company. Appellees assert further that § 544(a) is not limited to actions against third parties, nor does it only apply if a

---

[70] Appellant's Opening Br. 12.

30

creditor has obtained a judicial lien prepetition.[71] Appellees argue that, under § 544(a)(1), the Trustee stepped into the shoes of a hypothetical judgment lien creditor and with those rights could exercise the sole remedy under Wyoming law against a membership interest in an LLC by obtaining a charging order. Appellees maintain that the Trustee complied with Wyoming law by obtaining the Charging Order against an asset that is property of the estate.

Under § 544(a)(1), a trustee has the rights and powers of a hypothetical creditor that extends credit to the debtor at the time the bankruptcy case is commenced and obtains a judicial lien at that time on all property on which a creditor on a simple contract could have obtained a judicial lien. Section 544(a)(1) provides,

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by--
>
> > (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists[.][72]

The Tenth Circuit has explained that under § 544(a)(1),

> Not only is a trustee empowered to stand in the shoes of a debtor to set aside transfers to third parties, but the fiction permits the trustee also to assume the guise of a creditor with a judgment against the debtor. Under that guise, the trustee may invoke whatever remedies

---

[71] Appellees also argue the Trustee has the power to sell the Charging Order pursuant to § 363(b)(1). Although likely true, the sale of the Charging Order was the issue in BAP Appeal No. CO-23-14 and is not before the Court in this appeal.

[72] 11 U.S.C. § 544(a)(1).

[are] provided by state law to judgment lien creditors to satisfy judgments against the debtor.[73]

Wyoming law provides that a creditor of a member of a Wyoming limited liability company may apply for and obtain "a charging order against the transferable interest of the judgment debtor for the unsatisfied amount of the judgment."[74] A "transferable interest" is defined as "the right, as originally associated with a person's capacity as a member, to receive distributions from a limited liability company in accordance with the operating agreement, whether or not the person remains a member or continues to own any part of the right."[75] A charging order serves as the sole remedy to obtain satisfaction through a judgment debtor's interest in a limited liability company,[76] and requires the limited liability company to pay the person holding the charging order any distribution that would otherwise be paid to the judgment debtor.[77]

---

[73] *Zilkha Energy Co. v. Leighton*, 920 F.2d 1520, 1523 (10th Cir. 1990). Although *Zilka* uses the term "judgment lien creditors" instead of "judicial lien creditors" its reasoning applies equally to judicial lien creditors. Section 544(a)(1) uses the term "judicial lien," not "judgment lien." A judgment lien is a type of judicial lien. *See* 11 U.S.C. § 101(36) (defining "judicial lien"). *See also Rupp v. Duffin (In re Duffin)*, 457 B.R. 820, 828 (10th Cir. BAP 2011) ("We agree that the powers given to a trustee under § 544(a) are not limited to avoidance of transfers but specifically include broader 'rights and powers.'").

[74] Wyo. Stat. Ann. § 17-29-503(a).

[75] Wyo. Stat. Ann. § 17-29-102.

[76] Wyo. Stat Ann. § 17-29-503(g) ("Other remedies, including foreclosure on the judgment debtor's limited liability interest and a court order for directions, accounts and inquiries that the judgment debtor might have made are not available to the judgment creditor attempting to satisfy a judgment out of the judgment debtor's interest in the limited liability company and may not be ordered by the court.").

[77] *Id.*

Dr. Pettine has not incorrectly equated a charging order with a judicial lien, as Appellees contend. A charging order granted under Wyoming law is a type of a judicial lien, as that term is defined by the Bankruptcy Code. The Bankruptcy Code defines "judicial lien" as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding."[78] The Bankruptcy Code defines "lien" as a "charge against or interest in property to secure payment of a debt or a performance of an obligation."[79] A charging order is a charge against property to secure payment of a debt and is obtained by judgment or a legal or equitable process or proceeding. However, Dr. Pettine is incorrect that the Charging Order constitutes a *new* judicial lien.

Applying § 544(a)(1) to the facts of this case, the Trustee stands in the shoes of a hypothetical creditor who extended credit to Dr. Pettine at the time he commenced his bankruptcy case and obtained a judicial lien at that time on all property on which a creditor on a simple contract could have obtained a judicial lien. That includes a hypothetical creditor who obtained a charging order (which is a type of judicial lien) against the Membership Interest (property on which, under Wyoming law, a creditor on a simple contract could have obtained a judicial lien).[80] The Bankruptcy Court's entry of

---

[78] 11 U.S.C. § 101(36).

[79] 11 U.S.C. § 101(37). Wyoming has adopted the Uniform Limited Liability Act, with some non-uniform provisions.

[80] Wyoming law allows a judgment creditor of a member of a limited liability company to obtain a charging order against a judgment debtor's right to receive distributions from a limited liability company for the unsatisfied amount of the judgment. Wyo. Stat. Ann. § 17-29-503(a). The Membership Interest is nonexempt property of the estate. We express no opinion regarding whether the result would be different if Dr. Pettine had been allowed an exemption against the Membership Interest.

the Charging Order simply effectuated the Trustee's rights and powers of a hypothetical creditor that obtained a charging order against the Membership Interest at the time Dr. Pettine commenced his bankruptcy case.

Dr. Pettine's argument that the Charging Order strips him of a "fresh start" is misplaced. The bankruptcy discharge, which gives a debtor a fresh start, discharges liabilities; it does not protect the debtor from a trustee's liquidation of assets that are property of the estate.[81] Further, the bankruptcy discharge does not discharge judicial liens of either actual or hypothetical creditors.[82]

Section 544, by arming the Trustee with the power to invoke the charging order remedy under the Wyoming limited liability act, prevents Dr. Pettine from protecting his nonexempt right to receive distributions from the LLC by filing a chapter 7 case. Thus, the Bankruptcy Court did not err by issuing the Charging Order.

## IV.    Conclusion

Because Dr. Pettine has Article III standing and prudential standing to object to the Motion for Charging Order and to Approve Sale, we REVERSE the Bankruptcy Court's conclusion that Dr. Pettine did not have standing. Because we conclude that the

---

[81] See 11 U.S.C. § 524(a)(1) (describing the effect of a discharge).

[82] Judicial liens are not discharged in bankruptcy. *See id.* ("A discharge in a case under this title . . . voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt only if the judicial lien impairs an exemption. *See* 11 U.S.C. § 522(f)(1)(A). *See also In re Mansaray-Ruffin*, 530 F.3d 230, 235 (3d Cir. 2008) ("[I]t must be noted that bankruptcy has traditionally afforded special status to liens, allowing them to pass through bankruptcy unaffected.") (citing *Long v. Bullard*, 117 U.S. 617, 620–21 (1886)).

Bankruptcy Court did not err by entering the Charging Order and Order Regarding

Charging Order and Sale, we AFFIRM the Bankruptcy Court's decision on the merits.